Good morning, everyone, and welcome to the Ninth Circuit. In today's oral arguments, I'm Judge Sanchez, and with me is Judge Thomas, and we are pleased to welcome Judge Donato, who is visiting from Northern District of California, and we want to thank him for taking time out of his busy schedule to help us with our cases. We have a few matters that have been submitted for today. Beatriz Josefine Otiano-Paucaraja v. Bondi, Case No. 24-2245, Jesus Medina v. Bondi, Case No. 24-2246, Octavio Tellez Camacho v. Bondi, Case No. 24-705, and Goldwater Bank v. Bank of the West, and that is Case No. 24-661, and we have a couple of cases for argument today. The first one is Hogan v. Amazon.com, Case No. 24-1893, and Counsel May Approach. And please let us know if you want to reserve any time for rebuttal. Good morning, Your Honors. May it please the Court, Justin Moley on behalf of the Plaintiff's Appellants, and I would like to reserve one minute for rebuttal, please. There are four issues presented in this appeal. One, did the District Court err by dismissing Plaintiff's complaint on the ground that Plaintiff's failed to allege antitrust injury? Two, did the District Court err by ruling that Plaintiff's failed to plead a per se antitrust violation? Three, did the District Court err by dismissing the complaint on the ground that Plaintiff's failed to plead a relevant market? And four, did the District Court err by dismissing the complaint with prejudice without examining the foaming factors from the Supreme Court? The answer to all four of these questions, we believe, is yes. First, Plaintiff's did adequately plead antitrust injury. The allegations in our complaint satisfy the requirements of Illinois BRIC, Brunswick, and AGC, Associated General Contractors, and those are the case lines that typically decide how to analyze antitrust injury and antitrust standing. The District Court expressly recognized that Plaintiff's pled both that they purchase shipping directly from Amazon and that they pay higher prices for that shipping due to Amazon's misconduct. To quote from the District Court opinion, this is ER 10, page six, quote, Plaintiff's alleged that defendant's anti-competitive behaviors are restraining competition in the shipping market. Plaintiff's, who are consumers, allege that the shipping market is two-sided and they purchase shipping on one side of the market from Amazon, either by one, paying for an Amazon Prime membership, two, by paying shipping fees directly, or three, by paying higher prices for free shipping, unquote. Then on the next page, ER 11, page seven of the order, the District Court cites Apple v. Pepper, which should have dispensed with this motion to dismiss in the first place. And the court wrote, quote, Plaintiff's appear to purchase shipping directly from Amazon, unquote. So these two excerpts summarizing Plaintiff's allegations should have resolved the case. They should have resolved the issue at the motion to dismiss stage and led the District Court to deny the motion to dismiss. Instead, after recognizing Plaintiff's allegations that I just quoted, in the order, page seven, ER 11, the District Court concluded, quote, Plaintiff's do not allege that they suffered an antitrust injury in this market, unquote. Plaintiff's respectfully submit that the District Court should have stayed with Apple v. Pepper where it began the analysis. Plaintiff's did plead that they are direct purchasers, satisfying Illinois BRIC and Apple v. Pepper. Can I ask, just so that I understand, I understand there's a relevant market of fulfillment by Amazon where Amazon offers fulfillment services, logistics, and shipping for sellers to consumers. And then there's consumers purchasing products on Amazon.com, on the website. Why would purchasing a product and having that shipped be participation in the logistics shipping service itself, which seems to me geared to be toward the sellers themselves? Yes, Your Honor, Judge Sanchez, I think the key is that it is a two-sided market. If you think about selling and logistics as the actual getting one package from one place to another, from the seller to the consumer, there's two sides to that. The seller is paying for that service because they need to have some external service to move that package out the door, get it out. But the consumer also needs that. It's not just that. If the seller-retailer didn't pay a dime, the consumer would still need to pay to get the package. So it's on each side, they're both charged. But I guess in this, but they're not, so you're relying on Amex, I take it then, in order to call this a two-sided market. I'm trying to understand what are the limitations or the contours of the two-sided market because I think some would argue that a two-sided market requires simultaneous transactions, the network effects on either side. And I haven't seen the complaint really develop those theories very much. So can you explain to us here why does this qualify as a two-sided market? Yes, and I think, Your Honor, the two-sided market piece of this analysis really isn't necessary. The Amex analysis isn't necessary here. We're discussing the two-sided market just in terms of there are two different parties purchasing the same service. It's not a case where you need necessarily a certain level of popularity on one side in order to be valuable to the other side, which is the point of a two-sided market analysis in Amex. This is much more like Apple v. Pepper and McCready. So in Apple v. Pepper, you had app developers. They sold to Apple. They sell their apps to Apple to sell on to consumers. And that's the same type of two-sided market in the sense that both app developers and consumers go to Apple. And Apple is the one alleged with misconduct. And so here, it's exactly the same. These sellers that use Amazon shipping, they have a claim against Amazon. At least in Apple, it's the same mobile app market. And you've got the developers on one side and you have consumers of the app market on the other. Here, what seems a little bit muddled to me is on the one hand, you have people buying products that are shipped to them, and on the other hand, you have Amazon offering this fulfillment services to the sellers. It doesn't seem to align in the exact same kind of way. And I think, Your Honor, to us and our allegations, it does. And I think the district court that we quoted recognized that it does in the sense that we allege that even if it may not be a certain line item that says shipping on a consumer's receipt, they are paying for it. So that shipping logistic services that does occur whenever you buy a product from Amazon, the consumers are paying for that directly. That's what we allege. Does it matter that the consumers here are purchasing shipping on a monthly basis or on an annual basis through their prime memberships rather than simultaneously purchasing shipping every time they buy a product? Does that make a difference here? I don't think it does, Your Honor. I don't think that it, I'm not aware of any case law that would draw that distinction either. And typically, typically in the antitrust line of cases, the courts generally refuse to kind of try to draw overly formal distinctions based upon, you know, you paid at the exact time of the purchase or maybe it was a month later, maybe it was six months later. I think the courts generally look at the kind of economic reality. Well, I guess the question is whether it constitutes a simultaneous transaction for purposes of Amex. I mean, that's the question. I think that, I don't think that it would be universally at the exact same time of this shipping is purchased. As we point out, sometimes for some purchasers, it's showing up in the prime price itself. Some purchasers, it is a line item that is being charged at the exact time. So there is some variation there. I don't think it's universal in terms of the experience from the consumer side. You know, I'm doubtful that Apple is of much use to you because that case turned on the fact that Apple is known for having what's called a closed garden. It was Apple and Apple only here. That's not the case. And that leads me to my question. You say repeatedly in the second amended complaint that Amazon has monopoly power to foreclose competition and destroy competitors in the market for logistics. But you have a screenshot in paragraph 126, which shows on the left-hand side, you can buy from Amazon. And on the right-hand side, it said here's another option. You can buy from this other seller. It's faster. And this seller has a 94% positive review. In other words, it is plain as day that any consumer can go to the right-hand side of the screen and pick an option that is outside of the buy box. So how is Amazon, this is the antithesis of foreclosing competition and excluding rivals. Amazon's actually featuring the rivals on its own page. I think, I take your point, Your Honor, that there is a distinction to be drawn between a completely walled garden and this kind of exclusion that is in this case. But it's still an exclusion. It's a matter of degree. And their antitrust law does recognize degrees of exclusion. And here we're at the pleading stage. And I think we have pled adequate facts to show that there is a... But your screenshot says it was perfectly transparent on Amazon's own web page that you could choose another vendor and another shipping service. That really is the very opposite of excluding rivals or foreclosing competition. In fact, arguably, given all your statements about how popular Amazon is, they're promoting competition by making these otherwise smaller sellers widely available through its own platform. And I think, Your Honor, that I would disagree slightly with the idea that in order to be actionable antitrust claim, there has to be total foreclosure of the potential retail rivals. I don't... There has to be substantial foreclosure. But there's no factual allegation of substantial foreclosure. And paragraph 126 says it seems to be quite wide open. So I'm just trying to... I don't see anything in the second amended complaint as anything other than conclusory statements about foreclosure with some actual evidence that it cuts against you. I would just point out that I think ER111, complaint paragraph 21, we note that 90% of the sales on Amazon are through the buy box. And I think that that shows quantitatively, at least certainly at the pleading stage, that there is something unique about purchasing through the buy box for consumers. And we also know from the other allegations that Amazon does this for a reason. They don't keep the buy box just for the fun of it. It is, as it was admitted in the congressional hearings, to favor their shipping business. And that is if there was free... If they were just offering free competition, the algorithm would just allow perhaps the buy box placement to be based upon lowest price, period. It doesn't do that. It favors Amazon's products, Amazon's shipping. Let me ask you this. I found the allegations about consumers being injured to be pretty conclusory as well. As far as your allegations about sellers actually passing on fulfillment costs onto consumers, I think it would amount to an allegation that on a thread or on a post, one seller said, yeah, we pass it on to consumers, and maybe a second one did as well. Why aren't those allegations too deficient to allege that consumers are actually paying more because of fulfillment shipping issues that Amazon is thrusting on sellers? Yes, your honor. I think that we do. We go through about four different specific types of injury that consumers suffer because of this scheme. The first type of injury is that because of this tie, there are no cheaper products appearing in the buy box. In other words, there are cheaper products that could appear in the buy box, but the algorithm is favoring ones with logistics. The cheaper product never shows up. The consumer purchases a more expensive product. The second one that is kind of a corollary. I think the example you had in that had different shipping dates where one was this constrained period and another one was an extra 15 days. I'm not sure that it was an apples to apples comparison if I'm remembering correctly. I think that's right, your honor. I think the one that we did highlight in the complaint as an example is not a perfect example of that occurring. Again, we're at the pleading stage, and we have alleged that these injuries have occurred. Four very distinct specific types of injury that we have alleged. We don't need to prove those. But even if we take that first one of just different prices, how does that relate to a consumer being injured in the relevant market of shipping logistics? Because of the fact that the price that they're paying for the buy box product is going to be inflated compared to what they have as another option that they could have purchased at a cheaper price. Because the inflated shipping price is built into all of the products on Amazon. But that's what I'm getting. Based on what? How do we know that? How do we know that? How do we know that the price is inflated by the shipping costs that are attributable to Amazon's actions in the fulfillment market? We know enough about basic economic theory to allege that at this point in time. And that is the simple restrictions on competition at the seller logistics level, absence restrictions on competition raise prices. So I guess this is the point that I would make. You could imagine a world where Amazon is being coercive with sellers, but the sellers decide not to pass on those costs to consumers. They say they're being injured, but they're going to absorb that increase in order to be able to be competitive. And maybe they might have a claim against Amazon, but it's not the case that consumers are facing increased prices. And I just don't see the allegations here connecting the dots from A to B as to why that is not what's occurring and what you're saying is. And I think, Your Honor, we do, I believe, allege the four types of injury that I do think is sufficient. I take your point, but I believe it's a merits point that would go to discovery and expert analysis. It would be an econometric analysis to do a regression and figure out, are these prices actually rising or are they not? Absent this tie, would the prices have been lower or not? That's not a pleadings question, certainly not what we have pled. And at the motion to dismiss stage, that's enough. We're not pleading something that is implausible, that the absence or restrictions on competition lead to higher prices. That's not an implausible conclusion to derive from our allegations. Well, I agree it's 12B6 and you get some mileage out of that, but, you know, Twombly, the Wellspring, was an antitrust case. And Twombly says, you've got to be careful because you're going to open the door for three years of discovery and litigation on something that doesn't hold water. That's the concern here. So I hear what you're saying, but you have to cross the line of plausibility before you get to do all this fancy econometrics and discovery and everything else that antitrust cases do. And in addition to the conclusory points that both of us have made, I also, I just, I don't really understand the tying claim. I mean, your section one claim is a tying claim. And as I understand it, the tying product is literally the buy box on the Amazon page, right? Yes, Your Honor. Yes. Okay, so how is that a cognizable, how is that a relevant product market under the antitrust laws? Because in a tying case, you just need to show that the for market essentially has enough power, market power in one way or another, to have coercive effects downstream. And we know that Amazon has 70% of e-commerce, so even if you take our second... Those are all too general. If you define the buy box as the relevant product market, who are the competitors who've been excluded from the Amazon buy box? How is the market, who populates that market other than Amazon? I mean, it's a one product market. That's correct, Your Honor. That's why we plead two, we plead two markets. We plead two in the alternate. We plead that. We also plead e-commerce generally, which Amazon hasn't said. The tying market, the relevant product market for tying, the tying product is just the buy box, right? Yes, Your Honor. Okay. And it is similar exactly like Eastman Kodak was just Kodak copiers. And what is the for market in this? Just people buying on Amazon.com? Amazon buy box. The favorable placement on Amazon's website in the buy box where they do 90% of sales. It seems like you're not actually arguing for market after market theory. You're just saying the entire market is Amazon and the buy box. And I share Judge Donato's confusion as to who other competitors would be that would help sellers. Even if you step back from the buy box, who are other competitors that would help sellers be able to more favorably place their product, you know, for product placement on the Amazon website? And I don't think, you know, I think eBay came up and that doesn't seem to be an example that would fit the bill for that. So I'm also having a hard time understanding what the tying theory is. Yes, Your Honor. I'm on time, but I will absolutely answer your question. I do want to answer this. And that is just that I do think Eastman Kodak answers this. Even if you look at what we have pled to markets, and even if you look at it at the broader market of the for market being e-commerce sales, just like all copiers in Kodak or just Eastman Kodak copiers. Either way, the tie is the same. It was just based upon Eastman Kodak copy repairs downstream. Same here. It's just Amazon shipping. Okay. We'll give you a little more time for rebuttal. Good morning, Judge Sanchez, Judge Thomas, and Judge Donato, and may it please the court. I'm Jonathan Pitt from Williams and Connolly, and I represent Amazon. So nothing that we've heard from the plaintiffs today or seen in their papers changes what we take to be the dispositive fact here, the critical fact, which is the what they allege is a tie in this case, allegedly binds sellers on Amazon, not the consumers who brought this case. So to recover under the antitrust laws as private litigants, of course, these plaintiffs have to have suffered injuries in the market in which competition was harmed. They have to be either competitors or consumers in the market for business logistics, as Judge Sanchez, you were pointing out. That is the market in which the tied product here was sold. Their claim here is that third-party sellers in Amazon's store are forced to use fulfillment by Amazon, FBA, in order to appear as the featured offer, or as plaintiffs refer to it, the buy box. According to the plaintiffs, the tying product is placement as the featured offer, and I think it's fair to say that we would agree with the observation that there is serious question as to whether or not the placement in a buy box actually could be either a tie-in product or part of any cognizable tying product market. But the tied product here is FBA, and the plaintiffs don't buy either of them. The complaint repeatedly makes this point, and just to give one example, paragraph 26 of the second amended complaint, the plaintiffs allege, quote, placement in the buy box is the tying product or service, and sellers are the buyers. They further allege that, quote, fulfillment by Amazon is the tied product or service which sellers must purchase to obtain access to the buy box. In other parts, they define, in a number of places, they define FBA as, quote, a logistics service that provides warehousing, packing, and shipping to third-party sellers. That's in paragraph 15 of the second amended complaint. Mr. Pitt, I think if we didn't see this as a two-sided market, I would agree with you. Can you address counsel's arguments that this is two sides of the same market?  I think the allegation or the claim of a two-sided market actually really doesn't change the fundamental antitrust standing question here. The transaction that they allege harmed competition is a transaction that they allege harmed the seller-facing FBA market. They call it a two-sided market. I think for reasons that have been explored today, that description is not accurate because, as I think has been pointed out, to qualify as a two-sided market, we generally expect to see simultaneous transactions, and that's not what is being alleged here. They're really simply alleging what is effectively a pass-on theory. They're alleging that the sellers buy FBA from Amazon, and that the customers then purchase goods which are shipped, but the tied product that they are alleging... It doesn't have to be simultaneous, necessarily. We haven't decided that issue, right? In Apple, in the Epic versus Apple case, the two sides of that market were app distributors and the consumers of the app, but it didn't necessarily require them to be a part of the same transaction at the time, right? It was still seen as a single market and the effects of that. Yes, Your Honor, but I think in all of those cases, the App Store cases, for example, Epic versus Apple is a very good example because it was brought by a competitor that was actually excluded from the tied product market or the second product market. That is, Epic Games was saying that they were excluded directly from the market in which competition was harmed. We don't have that here. What we have instead is a claim repeatedly throughout the complaint that sellers were the ones who were coerced. Sellers were coerced, not consumers. They say that they were harmed, that is that consumers were harmed, as one of the ripples of and sometimes at several steps down, but one of the ripples of what they claim was a harm that affected sellers. Let me just probe this. If you do have a two-sided market, the two sides don't have to suffer the same type of injury, right? If this were a two-sided market, you can imagine the sellers are injured based on the fulfillment side of things, and I think claims would argue consumers are being injured because they're paying inflated prices for shipping on the other side. Yes, I still think, though, in that telling, Your Honor, what you're describing is a pass-through. In other words, the cause of the harm to competition here is a restraint that they say is placed upon sellers. They say that ultimately consumers pay more, obviously we dispute that, but they say that ultimately consumers pay more as a result of that. Again, however you want to classify it, whether you want to call it antitrust injury or antitrust standing, those injuries are simply too indirect, they're too far removed from what the claimed harm to competition is. And I think the fact that this is a tying case matters in that regard, and it's both their Section 1 and Section 2 claims. They are alleging a tying theory. They're alleging that there is a particular transaction that is causing the anti-competitive harm. They're alleging that that harm is being visited upon a market in which only sellers participate, and they're alleging that as somewhere down the line, consumers are thereby ultimately injured. So again, I think however one looks at this, two-sided market or not, I think the conclusion is really the same. Maybe you can give me some clarity on this. I should have asked your colleague, I forgot. So the logistics market is a term that comes up repeatedly in the Second Amendment complaint. It's not at all clear to me, and I don't think it's adequately alleged in the complaint, that each and every seller is necessarily in the logistics market. To me, logistics market means UPS, FedEx, DHL, you know, the big giant shipping corporations that are not at all in any way foreclosed by Amazon in any meaningful way that I can tell. But what was your understanding of who's in the logistics market and what does that mean? Well, Judge Donato, it's the same as yours. In other words, if we're talking about participants or competitors in that market, it is the FedExes, DHLs, UPS, Postal Service, and third-party logistics services of various kinds. I think what they do allege is that the sellers, the third-party sellers on Amazon, make purchases in what they refer to as either the fulfillment or logistics market. They are making purchases, but they are not competing in that market. Well, but the theory is Amazon's foreclosing logistics competitors. Yes. And I mean, did you? I saw nothing in the complaint, Your Honor, to suggest that in fact any logistics competitors had been foreclosed. That was one of the arguments that we had made below that Judge Chun, the district court judge, didn't have a need to reach that argument because he resolved it on the standing issues and on the market definition issue. But yes, we quite agree, Your Honor, that there is no allegation of any actual foreclosure in the tied product market, and that is the hallmark of, as this court has recognized many times, the hallmark of a tying claim is that you're alleging that the defendant used its power in one market to exclude competition in another market. And we don't see competition or allegations that competition was excluded. And in fact, that would be very, very hard for them to do because they have alleged that Amazon has a 20 percent market share in that logistics market. And so the notion that competition has been somehow foreclosed from it, I think, would be quite a difficult thing for them to allege. And what about the tying product market? How do you see the allegations frame this in terms of either as an Amazon marketplace or with multiple competitors? Sure, Your Honor. I think they have, they seem to have alleged two different tying product markets in their complaint. And one of them is a single brand market. And as to that market, we don't see any of the kinds of allegations in the complaint that we would ordinarily expect to see when one tries to define a single brand market. Single brand markets are very highly disfavored. I respectfully disagree with my friend on the other side that this is anything like the Kodak case. In the Kodak case, there was lock-in. It was a very significant factor in that case that led to the understanding that there was a foremarket and an aftermarket that weren't necessarily connected. So we don't think they've done that. As to the multi-brand market, I think the problem with what they've alleged is it's sort of boundless. They've alleged a market for favorable placement on the Internet. That is how they've alleged it. In their brief here, I think they've tried to sort of suggest that maybe that should be limited to e-commerce placements. I didn't read their complaint to be saying that. I read it to be saying it was favorable placement on the Internet more broadly in their words. That is a very, very difficult market to comprehend. Does it include Google, Facebook? Does it include banner ads on various parts of the Internet? So why not allow them another chance to amend? Apologies. That's been one of my main questions coming into the argument today, is why not give them another chance to try to plead and adequately allege this? I think there has only been one amendment, and when the court dismissed with prejudice, it only really gave a chance to allow plaintiffs to address certain of the claims and not others. So I think I would say a few things to that, Your Honor. The first is I don't think any amount of repleting can change the fundamentals here. There isn't a way under this theory for the plaintiffs properly to allege antitrust injury and antitrust standing. So however they choose to frame it, and they have in their second amended complaint, which obviously was their third complaint in this case, they did try to do what they could to plead around that problem. Respectfully, we don't believe they've done that, and we don't believe that any amount of artful pleading can get them around that problem. But as to, so I think the first point is it would be futile as to those issues, and so we don't even get to questions of market definition or the like. I think the second thing I would point out to Your Honor is we did, we've been making the same arguments to each complaint that has been filed. We made all of these arguments in response to their first complaint. They chose to amend narrowly after the first dismissal, which was by Judge Martinez before the case was then transferred with a bunch of other Amazon cases to Judge Chun. So we, you know, they, to say that they haven't had the opportunity, and I recognize, Your Honor, that the district judge, of course Judge Chun did not rule on various of the other grounds that we pointed out, and Judge Martinez did not premise his ruling upon the market definition question. I would say about market definition, Your Honor, that first of all, it's important to note that the per se rule of reason distinction for these purposes really doesn't matter. They did need to plead properly a tying product market. I think the trouble that they have had in doing so, and their conflation to some extent in their papers of a consumer e-commerce market with a, you know, placement on the internet market kind of shows the problems of this project here, which is that the placement on the internet market they're trying to allege, again, that is a market in which they don't participate, and the placement on the internet more broadly is one they don't participate in, and so ultimately, Your Honor, I think whatever market definition they attempt to come up with, I don't think is going to change those fundamentals, but I, of course, do acknowledge that there has only been one ruling by the district judge that actually dismissed on grounds of market definition. Thank you, Counselor, I don't think we have any more questions. Thank you, Your Honor. We'll give you a couple more minutes. Thank you, Your Honors. I'll be very brief. Thank you for the extra time. I want to lead with pointing out where it was left off about the dismissal with prejudice. I do think for us, the first dismissal was strictly on the grounds that we failed to plead that we were direct purchasers under Illinois BRIC, so the one amendment we had for this second amended complaint was really targeting that, bolstering our allegations about- Well, but you weren't limited to that. I mean, you had the benefit of hearing from your colleagues at Amazon about why they thought your complaint was wrong. You could have made any amendment you want. This is your third complaint. I mean, how many times do you get to go back to the well? I would respectfully request that we at least have the chance to amend on some of these elements, particularly the tying in relevant market pieces at least once, and we have not had the benefit of any feedback from the court on that. Your colleague here has raised these complaints from day one, he says. You've been on notice from day one that there were these issues. District judge doesn't need to decide each and every issue in a case. We couldn't get our hundreds of cases done if we did that. You go for the jugular, pick the ones that you think matter. Here's my concern. It's your third complaint. You obviously put a lot of energy into it. I mean, it's 60, 70 pages long. One of my concerns is it's extraordinarily light on any actual evidence. It's a lot of citing of newspaper articles and house reports and so on. Other people's basically editorial views, very thin on evidence. What evidence are you going to add to show that there's a market power in the buy box market and that's a credible market? What would you allege? What facts do you think you've been, I don't think you've been denied an opportunity, but what facts do you think you haven't had a chance to raise with respect just to that one point? I think that we would probably retain, we would have an expert economist retain that worked to help work on this complaint, and I think we would do some more actual econometric analysis using data and see what we can add to bolster those. It's a little late to wait to a third amended complaint to do that, isn't it? Well, Your Honor, I don't think that we had a district court finding yet that there was any problem with the allegations on this point before. The last thing I just wanted to say with my last couple seconds is I do believe that the argument about participation or non-participation in the shipping market is answered by McCready. I think that case, that Supreme Court case, allowed a patient to bring a claim against BCBS and a group of psychiatrists based upon lack of reimbursement in the psychotherapy and psychologist market, which she did not participate in. She was not a psychologist, she was a patient. Thank you very much. Thank you, counsel. Thank you both for your arguments and the matter will stand submitted.
judges: SANCHEZ, THOMAS, Donato